# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

JANICE L. BROOKS,

Plaintiff,

v.

PIONEER METAL FINISHING,

Defendant.

Civil No. 06-841 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Clayton D. Halunen, **HALUNEN & ASSOCIATES**, 220 South Sixth Street, Suite 2000, Minneapolis, MN 55402, for plaintiff.

Thomas M. Sipkins and Jennifer H. Wood, **MASLON EDELMAN BORMAN & BRAND LLP**, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402, for defendant.


Plaintiff Janice Brooks filed this lawsuit against defendant Pioneer Metal Finishing. She asserts claims of age discrimination under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01, and the Minnesota Dismissal for Age Act, Minn. Stat. § 181.81. She also asserts multiple violations of the Minnesota Whistleblower Statute, Minn. Stat. § 181.932. This matter is now before the Court on defendant's motion for summary judgment. For the reasons discussed below, the Court denies defendant's motion.

# BACKGROUND

Plaintiff Janice Brooks began working for defendant Pioneer Metal Finishing in the fall of 1998. She started as a Human Resources Administrator and was promoted to Human Resources Manager after four years of employment with defendant. Troy Ashton, who became the Operations Manager in April 2003, supervised plaintiff.

Plaintiff asserts that in 2004, defendant's President Robert Pyle and Vice President of Operations Paul Michaels told her and other upper level management that older employees were costing the company too much in insurance premiums, medical claims, and salaries, and that they needed to be replaced by younger employees. She asserts that at least four employees over the age of 40 were terminated after these statements were made.

In December 2004, plaintiff observed that defendant required both exempt and non-exempt employees[1] to take paid time off ("PTO") for days the plant was going to be shut down. Plaintiff also observed that defendant required salaried employees to take PTO for any scheduled time off, including brief doctor appointments. Plaintiff believed that these practices violated wage and hour laws, and she told Ashton and Michaels that she objected to the practices.

In January 2005, Michaels and Ashton asked plaintiff "to do whatever was necessary" to make sure that a former employee, Ali Bakr, did not receive unemployment

---

[1] The Fair Labor Standards Act generally requires employers to pay their employees at least one and a half times their regular wage rate for hours worked in excess of 40 in a given work week. *See* 29 U.S.C. § 207(a)(1). However, the Act provides limited exemptions from its overtime rule, and employees that qualify are considered "exempt" employees.

benefits.   (Brooks Dep. at 133.)   Plaintiff interpreted this statement as a directive to contrive evidence of misconduct by Bakr.   Plaintiff informed the state agency that there was no misconduct in Bakr's file, and he was awarded unemployment benefits.   On Friday, January 21, 2005, Ashton confronted plaintiff about her statement to the state agency.   Plaintiff asserts that Ashton was angry and told her that he "could have come up with something." (*Id.* at 138.)

On Monday, January 24, 2005, defendant terminated plaintiff's employment.   The termination meeting was attended by Ashton and Nicole White, who was the Human Resources Manager from the Green Bay office.   Ashton explained that plaintiff was being terminated because she was not adequately training employees and because she filled open positions too slowly.   Defendant replaced plaintiff with a 45-year-old woman, but that woman resigned after a few days of work.   Defendant then hired a woman in her late twenties for the permanent replacement for plaintiff.   Plaintiff was over 60 years old when she was terminated.

Several days after her termination, plaintiff asked for a complete copy of her personnel file.   She discovered that documents critical of her performance had been added to her file after her termination.   Defendant explains that Ashton kept a separate file on plaintiff and that he added these documents to her permanent file after she was terminated.

Plaintiff initiated this action by serving a complaint upon the Minnesota Secretary of State, and the case was removed to this Court in February 2006.

**ANALYSIS**

## I.      STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     STATUTE OF LIMITATIONS ON THE MHRA CLAIM

The MHRA requires that an aggrieved employee file an administrative charge or bring a civil action within one year of the allegedly discriminatory practice.  Minn. Stat. § 363A.28, subd. 3.  The parties do not dispute that the statute of limitations in this case began to run on January 24, 2005, which was the date that defendant terminated plaintiff's employment.

Plaintiff explains that no registered agent for defendant was on file in Minnesota, and as such, she utilized substitute service on the Minnesota Secretary of State.  Plaintiff offers a "Certificate of Delivery" as evidence that her complaint was served on January 24, 2006.  The Certificate of Delivery is an affidavit of a lawyer that previously

worked on the case, who states that he hand delivered the complaint on January 24, 2006 at about 2:45 pm.

Defendant argues that the lawyer affidavit is not credible because the Secretary of State stamped the complaint with the date and time of January 26, 2006 at 12:15 pm. In addition, defendant asserts that if the Certificate of Delivery were valid, plaintiff would have produced it earlier in the litigation.

The contradictory factual evidence in the record as to when plaintiff served the complaint upon the Minnesota Secretary of State prevents the Court from conclusively resolving the statute of limitations dispute at this stage. Because the Court concludes, as explained below, that the MHRA claim survives defendant's motion for summary judgment, this dispute of fact is material to the outcome of this litigation. As such, the Court denies defendant's motion for summary judgment on the basis of the statute of limitations.

## II.    AGE DISCRIMINATION CLAIMS

The *McDonnell Douglas* burden-shifting framework applies to discrimination claims under both the MHRA and Minn. Stat. § 181.81. *Baker v. Tooling Sci., Inc.*, 2005 WL 2105504 (D. Minn. Aug. 26, 2005). Under *McDonnell Douglas*, a plaintiff has the burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden, the plaintiff bears the

burden of demonstrating that the defendant's stated reason is a pretext for discrimination. *Id.* at 804.

## A.      Prima Facie Case

Plaintiff may establish her prima facie case either by direct evidence of a discriminatory motive or by indirect evidence through which a discriminatory motive may be inferred. *LeBlond v. Greenball Corp.*, 942 F. Supp. 1210, 1215 (D. Minn. 1996). Direct evidence is evidence that establishes "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006). Direct evidence does not include "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself." *Id.* (internal quotations omitted).

Plaintiff alleges that in 2004, senior executives of defendant told her and other upper level management that older employees were costing the company too much in insurance premiums, medical claims, and salaries, and that they needed to be replaced by younger employees. She alleges that the executives made these statements in at least four meetings that she attended. Plaintiff argues that these statements are direct evidence of discrimination.

The Court disagrees that plaintiff has provided direct evidence of discrimination. The evidence shows that Ashton alone made the decision to fire plaintiff. There is no

evidence that the senior executives influenced Ashton's decision because there is no evidence that Ashton attended any of the meetings where the discriminatory statements were allegedly made.  The statements by Pyle and Michaels are therefore stray remarks by persons not involved in the decision to terminate plaintiff's employment.  *See id.*; *see also Regan v. Natural Res. Group, Inc.*, 345 F. Supp. 2d 1000, 1014-15 (D. Minn. 2004) (holding that discriminatory comments made by a board member did not constitute direct evidence of discrimination because plaintiff presented no evidence linking the comments to the termination decision).  In addition to her claims about the statements by the senior executives, plaintiff raises additional arguments in support of her claim of direct evidence of discrimination.  None of these arguments have merit and are therefore not addressed here.

In the absence of direct evidence, plaintiff must show the following to establish a prima facie case of age discrimination: 1) she was at least 40 years old, (2) she was terminated, (3) she was meeting defendant's reasonable expectations at the time of her termination, and 4) she was replaced by someone substantially younger.  *Riebhoff v. Cenex/Land O'Lakes Agronomy Co.*, 1998 WL 901749, at *2 (Minn. Ct. App. Dec. 29, 1998).

Defendant argues that plaintiff cannot state a prima facie case because she cannot demonstrate that she was meeting defendant's reasonable expectations at the time of her termination.  Defendant asserts that plaintiff failed to correct numerous performance deficiencies that were brought to her attention.  Defendant points to an email sent by Ashton on December 19, 2003, in which Ashton states that the human resources

department is struggling to complete training on time.  Defendant asserts that on July 14, 2004, Ashton told plaintiff that she needed to act faster to get interviews scheduled with job candidates for open positions.  In the written evaluation of her job performance, Ashton also indicated that plaintiff was too slow in facilitating the employee review process and completing necessary corrective actions in response to internal quality audits. In December 2004, an external auditor characterized defendant's human resources processes in the Minneapolis division as ineffective.  Defendant also criticizes plaintiff for failing to complete all the items in her "Individual Development Plan," "2004 Calendar Year Performance Review," and "2004 Action Plan."

In her deposition testimony, plaintiff offers explanations for each of the shortcomings that defendant identified.  She asserts that she was responsible only for annual "right to know" training, and that if this did not occur on time, it was because defendant cancelled the training because employees had to fill work orders.  She asserts that she was not tasked with production training, other than providing folders of documents, which she did provide.  She agrees that she had a difficult time filling positions quickly, but explains that she faced this problem only because the wages offered by defendant were not competitive and therefore there were few qualified applicants.  As for the external audit, plaintiff criticizes the audit generally as inaccurate and explains that Ashton did not mention the audit to her at the termination meeting.  As for plaintiff's "Individual Development Plan," "2004 Calendar Year Performance Review," and "2004 Action Plan," plaintiff explains that she created these documents for herself and that she accomplished all the substantive items on the documents.  Plaintiff

also points to the absence of negative performance evaluations in her personnel file until after her termination.

The parties have presented contradictory evidence on plaintiff's performance of her job duties.  As one example, it is unclear whether the job duties that defendant asserts plaintiff deficiently completed were actually assigned to her.  The Court therefore concludes that a genuine issue of material fact exists as to whether plaintiff was meeting defendant's reasonable expectations at the time of her termination.

Plaintiff does not dispute that defendant has articulated several non-discriminatory, performance-related reasons for her termination.  The next question is whether the articulated reasons were a pretext for age discrimination.

### B.      Pretext

A plaintiff may sustain the burden to establish pretext "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff relies primarily on the statements of the senior executives as evidence of age discrimination.  Statements of senior executives can support an inference of age discrimination if combined with other evidence of pretext.  *Madel v. FCI Mktg.*, 116 F.3d 1247, 1252 (8th Cir. 1997) ("Evidence of a corporate atmosphere hostile to older employees can, if sufficient together with other evidence of pretext, support a reasonable inference of age discrimination.")

Plaintiff offers additional evidence of pretext.  First, she offers evidence that after the senior executives made the statements, at least four employees over the age of 40 were terminated.  Second, plaintiff submits affidavits of three former employees.  One employee testified that beginning in 2004 he observed a pattern where older employees were more often terminated than young employees.  Another testified that he observed defendant slowly getting rid of older workers, and that he heard co-workers say things like, "oh, you're coming up on 20 years; well, they'll be getting rid of you."  (Aff. of Jeff Atnoensen ¶ 8.)  Another former employee testified that she believes she was terminated because of her age.  She comes to this conclusion because she and several other older employees were fired and she observed that those employees were all good workers.  Third, plaintiff offers evidence that defendant did not follow its normal procedure (involving verbal and written warnings) in terminating plaintiff.

These statements by the senior officials in combination with the other evidence of pretext provided by plaintiff could reasonably support an inference that defendant's stated reason for terminating plaintiff was a pretext for discrimination.  In addition, as discussed above, plaintiff has presented evidence that the performance issues identified by defendant are not worthy of belief.  In sum, the Court concludes that the evidence presented by plaintiff creates a genuine issue of material fact as to whether age discrimination occurred.

Accordingly, the Court denies defendant's motion for summary judgment on the age discrimination claims.

## III.   MINNESOTA WHISTLEBLOWER STATUTE CLAIM

Plaintiff asserts that defendant retaliated against her in violation of the Minnesota Whistleblower Statute, Minn. Stat. § 181.932.   As with the age discrimination claims, courts typically resolve retaliation claims under the Minnesota Whistleblower Statute by applying the *McDonnell Douglas* approach.   *Nichols v. Metro Ctr. for Indep. Living, Inc.*, 50 F.3d 514, 516 (8th Cir. 1995).   To survive summary judgment, plaintiff must first make out a prima facie case of retaliation by demonstrating a genuine fact dispute: (1) that she engaged in protected conduct; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected conduct and the adverse action.   *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1135 (D. Minn. 2003).   As explained above, once the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action.   *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-03.   If the defendant meets this burden, the plaintiff bears the burden of demonstrating that the defendant's stated reason is a pretext for discrimination.   *Id.* at 804.

Plaintiff first argues that defendant retaliated against her when she objected to defendant's practice of requiring both exempt and non-exempt employees to take PTO for doctor appointments and other scheduled time off.   To succeed on a claim under the Minnesota Whistleblower Statute, a plaintiff must allege facts that "if proven, would constitute a violation of the law or rule adopted pursuant to law."   *Abraham v. County of Hennepin*, 639 N.W.2d 342, 355 (Minn. 2002).   Plaintiff cannot succeed on this basis for her retaliation claim because the Court finds nothing illegal about the practice to which

plaintiff objected.  *See, e.g.*, *Smidt v. Porter*, 695 N.W.2d 9, 20 (Iowa 2005) ("The overwhelming majority of courts have held that a deduction from an employee's accrued vacation or personal time for absences does not destroy the employee's status as a salaried employee because it does not constitute a reduction in 'salary' or 'compensation.'").

Plaintiff next argues that defendant retaliated against her when she refused to lie to the state agency regarding Bakr's claim for unemployment compensation.  These allegations, if proven true, would constitute a violation of law.  The question, however, is whether defendant actually asked her to lie to the state agency.  Plaintiff testified that defendant told her "to do whatever was necessary" to ensure that Bakr did not receive unemployment benefits.  (Brooks Dep. at 133.)  Plaintiff testified that she interpreted this statement as a directive to lie.  When she told the truth and Bakr was awarded the benefits, plaintiff testifies that Ashton told her that he "could have come up with something" and appeared angry.  (*Id.* at 138.)  Under these circumstances, the Court finds that a reasonable jury could conclude that Ashton's vague statement was a directive for plaintiff to lie to the state agency and that plaintiff engaged in protected activity when she objected to defendant's alleged illegal directive.

The next question is whether there is a causal connection between plaintiff's protected activity and defendant's decision to terminate plaintiff.  Defendant argues that there can be no causal connection because the decision to terminate plaintiff was made before defendant became aware that plaintiff refused to lie to the state agency.  It is undisputed that on Friday, January 21, Ashton found out that Bakr had been awarded

unemployment benefits and confronted plaintiff about this fact. However, the parties have offered contradictory evidence on when the decision to terminate plaintiff was made.

Defendant relies on an affidavit of Nicole White, who states that she was called on Thursday, January 20, 2005 to come to Minneapolis, Minnesota and assist in the termination of plaintiff. Plaintiff, on the other hand, testified in her deposition that White told her after the termination meeting that Ashton called White on the afternoon of Friday, January 21 to ask her to come to Minneapolis. Viewing the disputed facts in a light most favorable to plaintiff, the temporal proximity between her protected activity and her termination is less than a day, which is sufficient to demonstrate a causal connection.

As explained above, defendant has offered legitimate reasons for terminating her employment. To survive summary judgment, plaintiff must offer evidence sufficient for a reasonable jury to conclude that the reasons for termination offered by defendant were a pretext for retaliation.

Plaintiff offers evidence that the performance issues articulated by defendant were fabricated, or otherwise not worthy of belief. As explained above, plaintiff offers explanations for each of the shortcomings in plaintiff's performance that defendant identified. As further evidence of pretext, plaintiff points to the fact that her personnel file was free of any negative feedback until after her termination. Plaintiff also offers evidence that normal discipline procedures were not followed in her case. Specifically,

she asserts that she was not given adequate warning that her performance was deficient prior to her termination.

As discussed in the context of plaintiff's age discrimination claims, the Court finds that plaintiff has put forth sufficient evidence to create a fact issue on whether plaintiff was adequately performing her job duties. This evidence, along with the additional evidence of pretext offered by plaintiff, could also lead a reasonable jury to find that the reasons for termination offered by defendant were a pretext for retaliation. The Court therefore denies defendant's motion for summary judgment on the plaintiff's retaliation claims.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 22] is **DENIED**.

DATED:  May 7, 2007
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge